**Michael GILL, Plaintiff, Appellant,**

v.

**Scot THOMAS, etc., et al., Defendants, Appellees.**

**No. 95–2303.**

United States Court of Appeals, First Circuit.

Heard April 5, 1996.

Decided May 15, 1996.

Cynthia A. Dill, Portland, ME, for appellant.

Edward R. Benjamin, with whom Anne Skopp and Preti, Flaherty, Beliveau & Pachios, Portland, ME, were on brief, for appellees.

Before SELYA, STAHL and LYNCH, Circuit Judges.

STAHL, Circuit Judge.

Plaintiff-appellant Michael Gill sought redress under 42 U.S.C. § 1983 in Maine's federal district court for a police officer's alleged use of excessive force in arresting him following a routine traffic stop. After a two-day trial before a magistrate judge,[1] the jury returned a verdict for the police officer. Gill appeals the magistrate judge's denial of his *in limine* motion to preclude evidence of his prior misdemeanor convictions. Because we find that Gill waived his right to appeal the *in limine* ruling, we affirm.

## I.

### Background

#### A. The Incident

On the night of November 27, 1993, Officer Scot Thomas of the South Berwick, Maine, Police Department stopped Michael Gill for driving with defective taillights. After obtaining Gill's driver's license and registration, Officer Thomas contacted the police dispatcher from his cruiser and learned that Gill's privilege to operate a motor vehicle in Maine had been suspended. Back at Gill's truck,

---

1. Under Fed.R.Civ.P. 73, the parties consented to the magistrate judge, rather than the district judge, conducting the jury trial.

Officer Thomas notified Gill of the suspension and the resulting need to arrest him.

Gill and Officer Thomas both agree that the following sequence of events occurred thereafter: (1) Gill claimed that the suspension was a mistake, (2) Gill initially refused Thomas's request to place his hands on the cruiser, (3) Thomas's police dog bit Gill's arm, (4) Gill threatened to sue Thomas, and (5) Thomas sprayed Gill's face with mace. Predictably, however, Gill's and Thomas's stories diverge on the question of their respective roles in the foregoing events. While Gill maintains that he offered no physical resistance to Thomas and therefore the dog's attack and the mace were an excessive use of force, Officer Thomas contends that Gill physically resisted his attempts to effect the arrest and therefore the amount of force was justified.

### B. The In Limine Motion and Ruling

Cognizant that his credibility would be the decisive factor at the impending jury trial, Gill filed a motion *in limine* seeking to preclude Thomas from inquiring about five of Gill's seven misdemeanor convictions.[2] In particular, Gill sought to exclude evidence of his two convictions for simple assault as well as his convictions for resisting arrest, criminal mischief, and willful concealment. Gill argued that because none of the five misdemeanors involved dishonesty or false statement or was punishable "by death or imprisonment in excess of one year," they could not be admitted under Rule 609 of the Federal Rules of Evidence. Thomas responded that while four[3] of the five misdemeanors were outside the parameters of Rule 609, each was nonetheless admissible to impeach Gill's answer to interrogatory # 7.

Interrogatory # 7 asked:

If you have been convicted of a crime involving potential punishment of *one year or more* or involving dishonesty or moral turpitude, please set forth the nature of the crime, the date of each conviction, the name of each court where the conviction took place, and a full description of any and all sentences imposed.

(Emphasis added). Gill replied "No." Thomas argued that Gill's failure to list the five misdemeanors (each of which involved terms of imprisonment of "up to one year") as well as the convictions for filing a false report and theft by deception (both of which patently involved dishonesty) constituted a false statement under oath, and Thomas should be permitted to impeach Gill with this falsity at trial.

After a hearing, the magistrate judge denied the *in limine* motion and stated that he would permit Thomas to question Gill about his convictions for the limited purpose of illustrating the inconsistency between Gill's interrogatory answer and "the apparent fact that he has been convicted for a number of crimes which would have required him to answer that interrogatory differently." The magistrate judge also indicated that he would give a limiting instruction to the jury if and when such testimony was elicited.

### C. Presentation of the Misdemeanor Evidence at Trial

After opening arguments, Gill took the stand as his own first witness. In response to his attorney's questions, Gill described the events surrounding his arrest and then proceeded to enumerate each of his criminal convictions and describe the circumstances surrounding them (to the extent he could remember). For instance, after testifying that he had been convicted of simple assault on June 10, 1985, Gill recalled the circumstances of that crime by stating, "I think that was involved again with the DWI." Gill was alluding to his previous testimony about a driving-while-intoxicated incident following which he was convicted for resisting arrest.

Gill then addressed his answer to interrogatory # 7. Admitting that his answer was

---

**2.** Gill conceded that his prior convictions for filing a false report and theft by deception were admissible under Fed.R.Evid. 609(a)(2).

**3.** Thomas argued that Gill's conviction for willful concealment may have involved dishonesty or

false statement and requested that the magistrate judge question Gill about the facts surrounding his commission of this offense in order to facilitate that determination.

inaccurate, Gill explained that he had mistakenly read the interrogatory to be asking about felonies and believed that his convictions for filing a false report and theft by deception did not involve dishonesty. Finally, Gill squarely addressed his credibility in light of his checkered criminal past and erroneous answer to interrogatory # 7, testifying as follows:

> Q: Mr. Gill, in light of this long criminal history that we've just gone through, including some crimes which involved some kind of dishonesty, how do you expect the jury to believe the story you've just told us about what happened with Officer Thomas?

> A: ... I quit drinking in 1989 with the help of a friend and have been trying since then to turn my life around.... Things that I can change about myself and I have been changing, and I have since 1989 is I'm not a liar, and I'm not a thief.

On cross-examination, Officer Thomas also questioned Gill about his answer to interrogatory # 7. For each of Gill's convictions, Thomas asked whether Gill had listed that particular conviction in his answer to interrogatory # 7, to which Gill repeatedly answered that he had not. In the course of inquiring about Gill's January 1983 conviction for resisting arrest and his June 10, 1985, conviction for assault, Thomas highlighted what had already been brought out on direct, i.e., that both convictions involved a police officer who was trying to place Gill in custody.

Having offered the evidence of his criminal record himself, Gill neither requested a jury instruction limiting the purpose for which this evidence could be used nor objected to Thomas's questions regarding these convictions on cross-examination. The jury subsequently returned a verdict for Officer Thomas, and this appeal ensued.

## II.

### Analysis

Gill appeals the magistrate judge's denial of his *in limine* motion, arguing that the five misdemeanor convictions were inadmissible under Rule 609 of the Federal Rules of Evidence. Gill maintains that but for the magistrate judge having indicated that he would permit Thomas to raise them on cross-examination, Gill never would have revealed his misdemeanor convictions on direct examination. Our case law instructs us, however, that Gill chose to introduce his convictions on direct examination at his peril and cannot be heard to complain on appeal of the admission of such evidence.

In *Fusco v. General Motors Corp.*, 11 F.3d 259, 262 (1st Cir.1993), we held that when a party's *in limine* motion to exclude evidence is denied, she cannot rely on her objection to the *in limine* ruling to preserve the right to appeal the admission of the contested evidence. She must renew her objection at trial "when the evidence is actually offered." [4] *Id.; see also Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 274 (8th Cir.1987) ("[M]otion *in limine* does not preserve error [in subsequent admission of evidence] for appellate review."); *Petty v. Ideco, Div. of Dresser Indus., Inc.*, 761 F.2d 1146, 1150 (5th Cir.1985) ("[A] party whose motion *in limine* is overruled must renew his objection when the error he sought to prevent is about to occur at trial.").

We require this renewal in order to give the district court an opportunity to "reconsider the ruling with the concrete evidence presented in the actual context of the trial." *Fusco*, 11 F.3d at 262; *see also United States v. Griffin*, 818 F.2d 97, 105 (1st Cir.) (holding that "to raise and preserve for review the claim of [evidentiary error], a party must obtain the order admitting or excluding the controversial evidence in the actual setting of the trial"), *cert. denied*, 484

---

4. *Fusco* also held, however, that where the *in limine* motion to exclude is granted and the proponent of the evidence is unconditionally precluded from presenting the evidence at trial, the proponent has preserved the issue for appeal and need not renew the offer at trial. 11 F.3d at 262–63. *See also United States v. Holmquist*, 36

F.3d 154, 166 n. 12 (1st Cir.1994) (discussing situations in which the proponent of evidence excluded by a pretrial *in limine* ruling will be deemed to have preserved the issue for appeal without proffering the excluded evidence during the trial), *cert. denied*, —— U.S. ——, 115 S.Ct. 1797, 131 L.Ed.2d 724 (1995).

U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). Without such a requirement, the reviewing court would be forced to speculate whether the party who proposed to offer the evidence would have done so at trial and whether, if she had offered the evidence, the district court would have changed its *in limine* ruling "in the give-and-take of live testimony." *United States v. Nivica,* 887 F.2d 1110, 1115–16 (1st Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990). Thus, Gill cannot rely solely on his *in limine* objection to preserve the evidentiary issue for appeal.

■ At trial, rather than waiting for Thomas to introduce the misdemeanors, objecting, and allowing the magistrate judge to reconsider his *in limine* ruling, Gill opted to introduce the misdemeanors preemptively to "remove the sting" from Thomas's anticipated impeachment. While this may have been a wise tactical decision, as a consequence, Gill "opened the door" to Thomas's cross-examination on the misdemeanors and thereby eliminated any potential evidentiary error. Moreover, having offered the misdemeanors himself and having received the strategic benefit therefrom, Gill cannot now be heard to complain that his own offer of such evidence was reversible error. *See United States v. Williams,* 939 F.2d 721, 723–25 (9th Cir.1991) (holding that by introducing evidence of conviction himself defendant waived right to appeal *in limine* ruling that evidence of prior conviction was admissible for impeachment); *United States v. Bryan,* 534 F.2d 205, 206 (9th Cir.1976) (refusing to allow defendant to complain about the admission of evidence about a prior conviction when defendant introduced the offending fact in the first instance); *Shorter v. United States,* 412 F.2d 428, 431 (9th Cir.) (same), *cert. denied,* 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969).

To preserve his *in limine* objection to the admissibility of the misdemeanor convictions for this appeal, Gill should have refrained from offering the evidence himself, waited to see if Thomas introduced them on cross-examination, and if so, objected then. In sum, Gill's own action of offering the misdemeanor evidence himself rendered it admissi-ble. Or stated differently, by offering the misdemeanor evidence himself, Gill waived his opportunity to object and thus did not preserve the issue for appeal.

*Affirmed.*